[No. 23783. Department One. September 21, 1932.]

PETER BALKEMA *et al., as Receivers of Jones Piggly Wiggly Company, Respondents, v. H. E. WARNER et al., as Receivers of United Groceries & Markets, Inc., Appellants.*

SEATTLE ASSOCIATION OF CREDIT MEN, *Respondent, v. H. E. WARNER et al., as Receivers of United Groceries & Markets, Inc., Appellants.*[1]

*Patterson & Patterson,* for appellants.

*Palmer, Askren & Brethorst* and *Bayley & Croson,* for respondents.

MITCHELL, J.—Peter Balkema and William H. Sanders were appointed by the superior court and qualified as receivers of the Jones Piggly Wiggly Company, a Washington corporation (hereinafter spoken of as the Piggly Wiggly Company), and as such receivers sold on or about October 20, 1930, twenty-six stores or stocks of merchandise to the United Food Products,

[1]Reported in 14 P. (2d) 46.

Inc., a corporation (hereinafter called United Food), for $35,000 cash, one note in the sum of $51,360.02 and another note in the sum of $60,000, and in addition the stockholders of the Piggly Wiggly Company were given certain rights to purchase capital stock of United Food.

Each of the notes was signed by United Food Products, Inc., K. C. Raab, E. R. Errion, Lloyd Raab, Alden Fischer, E. O. Adams, and J. L. Johns, as makers; and the $60,000 note was endorsed with a written guarantee of payment by Raab Bros. & Errion, Inc., which note, prior to maturity, was, for a valuable consideration, endorsed and delivered by the Piggly Wiggly Company receivers to the Seattle Association of Credit Men. Nothing has been paid on the note of $51,360.02. Forty-eight thousand dollars on principal and some interest were paid on the $60,000 note. Possession of the stores was delivered to United Food, which, after operating them a short time, sold and delivered them to United Groceries & Markets, Inc. (hereinafter called United Groceries).

The Piggly Wiggly Company receivers brought an action on the note for $51,360.02 against the makers, and also against United Groceries; against the latter upon the allegation that United Food and United Groceries, on account of a conspiracy to defraud creditors, had, without consideration, caused a fraudulent transfer of all the assets of the United Food to the United Groceries, both of which corporations it was alleged were insolvent.

The Seattle Association of Credit Men commenced an action to recover the balance due on the $60,000 note, against the makers and guarantor and also against United Groceries; against the latter upon the allegation that a transfer by United Food of its assets to United Groceries was in fraud of creditors. The

complaint also sought foreclosure of the debtors' rights in certain stock collateral to the note. The complaint further alleged that United Food and United Groceries were insolvent. After the actions were brought, a receiver was appointed for United Food as an insolvent corporation, which, though served with process and complaint in each of these actions, did not appear, but suffered the entry of default against it.

After the actions were commenced, H. E. Warner and E. W. Hoffman were appointed receivers of United Groceries, as an insolvent corporation, who, as such receivers, were substituted for that corporation as defendants in each of the actions.

The answer of the receivers of United Groceries to each complaint consisted of general denials, and also affirmative defenses to the effect that they had been appointed and were acting as receivers of the assets of United Groceries, now being administered by them as receivers, and that the plaintiff in each case has presented to the receivers a claim for the same account mentioned in the complaint herein; and that the goods coming into their possession formerly belonging to the Piggly Wiggly Company were taken with the knowledge and approval of the receivers of the Piggly Wiggly Company, who are estopped from asserting any fraud in the transfer, and that they have ratified and confirmed the sale.

Prior to trial, writs of garnishment against the receivers of United Groceries and others were issued upon affidavits which were controverted. Both actions, together with the garnishment proceedings, were consolidated for trial, upon which one set of findings and conclusions and a joint judgment were entered. The receivers of United Groceries have appealed.

In substance or in full, the court found that, on October 15, 1930, the defendants, makers of the notes, for a

valuable consideration executed and delivered to the receivers of Piggly Wiggly Company the note in the sum of $51,360.02; that, at the same time, the same parties, for a valuable consideration, executed and delivered to the same receivers the $60,000 note, and that, as a part of the same transaction and for a valuable consideration, Raab Bros. & Errion, Inc., guaranteed in writing the payment of this last named note; and that, prior to the maturity of the note and for a valuable consideration, the receivers endorsed and delivered the same to the Seattle Association of Credit Men.

That the note for $51,360.02 had become due and that nothing had been paid on it, and that the whole amount, including interest, is due and owing by the makers. That on the $60,000 note, there is now due and owing to the Seattle Association of Credit Men, from the makers of the note, a balance of $12,000, together with interest from May 15, 1931.

"That at the time of the execution of said notes the defendants K. L. Raab, Lloyd Raab, Alden Fischer, E. O. Adams, J. L. Johns and E. R. Errion were stockholders of Raab Brothers & Errion, Inc. which had received a commission of Thirty Thousand Dollars ($30,000) in the transaction in which the said notes were executed and delivered and that all of said parties were at the time of the execution of said notes or within a few months thereafter stockholders and trustees of the United Food Products, Inc., and the United Groceries and Markets, Inc., . . . "

More accurately, as we understand the testimony, the latter part of this finding should be that all the parties mentioned were, at the time of executing the two notes, officers or stockholders of the United Food and also of United Groceries, except Alden Fischer, who became connected with the two companies in February, 1931.

On October 20, 1930, the receivers of the Piggly Wiggly Company, under direction of the superior court, sold the twenty-six stores to United Food in consideration of the cash and two notes mentioned; and as a further consideration for the stores, the stockholders of the Piggly Wiggly Company were given an option to purchase shares of the capital stock of the United Food on specified terms; that, for a while, United Groceries acted as agent for the receivers of the Piggly Wiggly Company in operating the stores, but that, on November 6, 1930, such receivers delivered the twenty-six stores into the possession of United Food, which latter company operated them until on or about November 20, 1930.

"That on or about the 19th day of November, 1930, the United Food Products, Inc., purported to sell the said twenty-six stores to the United Groceries and Markets, Inc., the two corporations having at said time an interlocking directorate, for the sum of Thirty-five Thousand Dollars ($35,000) cash and common and preferred stock in the United Groceries and Markets, Inc., in an amount equal to the balance of the purchase price due the receivers of the Jones Piggly Wiggly Company, together with a commission of Thirty Thousand Dollars ($30,000) and the losses sustained by the United Food Products, Inc., during the operation of such stores; the amount of the common and preferred stock, however, to be paid to the United Food Products, Inc., by the United Groceries and Markets, Inc., was not to exceed Two Hundred and Eighty-nine Thousand Dollars ($289,000) and under said agreement the said stock was to be transferred by the United Groceries and Markets, Inc., to the United Food Products, Inc., on and after the 22nd day of February, 1931. That the possession of said stores was delivered to the United Groceries and Markets, Inc., on or about the 20th day of November, 1930.

"That immediately thereafter the terms of the purchase price were altered and the United Groceries and Markets, Inc., transferred to the United Food Prod-

ucts, Inc., as a part of the purchase price, a note in the sum of approximately Forty Thousand Dollars ($40,-000) executed by Raab Brothers & Errion, Inc., to the United Groceries and Markets, Inc., and that upon the receipt of said note by the United Food Products, Inc., the said note was delivered to Raab Brothers & Errion, Inc., in payment of an indebtedness owed by the United Food Products, Inc., to Raab Brothers & Errion, Inc., which indebtedness was due and owing from the United Food Products, Inc., to Raab Brothers & Errion, Inc., on or about November 19th, 1930, when the purported sale of said stores was made by the United Food Products, Inc., to the United Groceries and Markets, Inc.

"That thereafter and on or about the 10th day of February, 1931, K. L. Raab and Lloyd Raab resigned as trustees and as President and Secretary, respectively, of the United Food Products, Inc., and United Groceries and Markets, Inc., and thereafter, and during the remainder of the month of February and the month of March, joint meetings of the trustees of the United Food Products, Inc., and of the United Groceries and Markets, Inc., were held, and refused to conclude the sale of the aforesaid twenty-six stores to the United Groceries and Markets, Inc., on the basis of the agreement under date of November 19th, 1930, and it was further agreed that it would be impossible to transfer to the United Food Products, Inc., the stock of the United Groceries and Markets, Inc., at said time for the reason that it would be in violation of the Blue Sky Laws of the state of Washington; and at said joint meetings of the trustees it was finally determined and agreed to modify the agreement under date of November 19th, 1930, and under the terms of said new agreement the United Groceries and Markets, Inc., agreed to pay the balance of the purchase price in cash to the United Food Products, Inc., and the United Food Products, Inc., agreed to accept cash in lieu of stock. That all of the trustees of both corporations were present during said joint meetings excepting E. O. Adams, who after the said agreement ratified the same. That at said time the defendants K. L. Raab, Lloyd

Raab, Alden Fischer, E. R. Errion, J. L. Johns and E. O. Adams consented to the sale under said terms and did then and there agree to release their security. That the United Groceries and Markets, Inc., did thereafter pay to the United Food Products, Inc., on account of the purchase price of said stores, the sum of Twenty-three Thousand Three Hundred Dollars ($23,-300) and there was at the time of the institution of these actions, and there now is, the sum of One Hundred and Five Thousand Dollars ($105,000) due and owing on the purchase price by the United Groceries and Markets, Inc., to the United Food Products, Inc.

"That the United Food Products, Inc., failed to deliver to the United Groceries and Markets, Inc., an affidavit of its creditors at the time of said purported sale on November 19th, 1930, or at all, and the United Groceries and Markets, Inc., failed to demand of the United Food Products, Inc., an affidavit of its creditors at the time of said purported sale, or at all, and the said United Food Products, Inc., and United Groceries and Markets, Inc., wholly failed to comply with the statutes of the state of Washington relative to sales in bulk.

"That at the time of the purported sale of the said Jones Piggly Wiggly stores by the United Food Products, Inc., to the United Groceries and Markets, Inc., the United Food Products, Inc. had remaining in its possession only a small amount of assets and an amount far insufficient to pay the balance of the purchase price due the receivers of the Jones Piggly Wiggly Company, and had no visible means, or any means, of paying the said balance of the purchase price, and unless the United Groceries and Markets, Inc., paid to the United Food Products, Inc., the purchase price of the said stores in cash, the United Food Products, Inc., was unable to pay to the receivers of the Jones Piggly Wiggly Company the amounts due on the aforementioned notes.

"That at the time of the purported sale of the said Jones Piggly Wiggly stores by the United Food Products, Inc., to the United Groceries and Markets, Inc., the United Groceries and Markets, Inc., had no un-

issued common stock to issue to the United Food Products, Inc., on account of said purchase price, nor did it have at said time a permit from the state of Washington to issue or sell any of its common or preferred stock, and the United Groceries and Markets, Inc. did not receive from the state of Washington a permit to issue or sell any of its common or preferred stock until the latter part of March, 1931, when a permit was issued to it authorizing the sale of Thirty Thousand (30,000) shares of preferred stock for the purpose of raising money to pay the aforementioned notes, and almost immediately after the issuance of a permit for the sale or issue of its preferred stock the state of Washington, Department of Licenses, revoked said permit and denied to the United Groceries and Markets, Inc., the right to issue any of its common or preferred stock.

"That the sale of said twenty-six Jones Piggly Wiggly stores by the United Food Products, Inc., to the United Groceries and Markets, Inc., was fraudulent and made for the purpose of hindering and defrauding its creditors, including the plaintiffs, Peter Balkema and William H. Sanders, receivers of the Jones Piggly Wiggly Company, and Seattle Association of Credit Men, the holders of the said two notes.

"That the sale of said twenty-six Jones Piggly Wiggly stores by the United Food Products, Inc., to the United Groceries and Markets, Inc., was partly in cash and partly on credit, and the portion of the purchase price which was paid in cash by the United Groceries and Markets, Inc., to the United Food Products, Inc., was not pro-rated among the creditors of the United Food Products, Inc., but all of the creditors of the United Food Products, Inc., with the exception of these plaintiffs, were paid in full the amounts owing to them by the United Food Products, Inc. That out of the purchase money received by the United Food Products, Inc., from the United Groceries and Markets, Inc., there was paid the sum of Eighteen Thousand One Hundred and Sixty Dollars ($18,160) to J. O. Gallagher, the sum of approximately Forty Thousand Dollars ($40,000) to Raab Brothers & Errion, Inc., and

an undeterminable sum for rent and salaries owing at the time of said purported sale.''

That, after these actions were brought, the parties interested stipulated in writing that certain of the stores and merchandise should be sold by the receivers of United Groceries, the proceeds to be finally disposed of by order of court, under which stipulation and arrangement such stores and merchandise were sold for the sum of $53,322.85, which the court found the plaintiffs were entitled to.

That the plaintiffs in these two actions did not learn until May, 1931, of the sale of the twenty-six stores to United Groceries by United Food, whereupon plaintiffs notified the officers of United Groceries and United Food that the sale was void and in fraud of their rights, and that the United Groceries should hold the stores and merchandise in trust for the plaintiffs until they were paid in full; and that the United Groceries agreed to so hold the stores and goods in trust. That United Food and United Groceries knew at that time that, other than the proceeds from the stores and merchandise, the plaintiffs would be wholly unable to collect against the makers of the notes.

That, about July 19, 1931, United Groceries executed a certain mortgage covering all its assets to C. P. King, as trustee for creditors of United Groceries, which mortgagee and creditors, at and prior to the date of the mortgage, had knowledge of the claims of these plaintiffs for which the stores and merchandise were being held in trust by United Groceries.

That certain garnishee defendants were found to be indebted in specific amounts mentioned to certain of the defendants in the main actions; and that, under a writ sued out by the receivers of the Piggly Wiggly

Company, a certain lot of real property, describing it, had been attached.

Appropriate conclusions were made and filed, upon which the judgment was entered, among other things, that the receivers of United Groceries pay into court or to plaintiffs in the two actions $53,322.85 and costs; that the receivers of United Groceries are indebted to United Food in the sum of $92,677.15, and that the plaintiffs in these actions are entitled to such dividends as may be declared *to the extent of the satisfaction of the judgment;* and that the receivers of the Piggly Wiggly Company recover on several writs of garnishment $125, $751, $18,337.30, $1,481, and $76.49, and that the judgment in favor of plaintiff receivers is declared to be a lien upon the lot of real property attached.

Upon a careful examination of the evidence, it is found to sustain, in our opinion, by a fair preponderance, the conclusions and judgment entered.

We may notice, however, some of appellants' specific contentions. It is argued that the sale from United Food to United Groceries was not within the sales-in-bulk statutes, because, as we understand, the United Food was never in possession of the stores in question and never engaged in the buying and selling of merchandise of any kind. But the court found, upon positive testimony of the receiver who delivered possession and of other witnesses, that the United Food took possession of the stores from the receivers of the Piggly Wiggly Company on November 6, 1930, ''and operated them in the usual course of business until on or about the 20th day of November, 1930.''

It is also contended that, if the sale was within the statutes, failure to comply with the statutes resulted in no injury to the respondents. But the finding of the court is that, after United Food sold to United

Groceries, its remaining assets were far insufficient to pay the balance of the purchase price due the receivers of Piggly Wiggly Company, and it had no visible means or any means of paying the balance of the purchase price.

It is further argued that the sale by United Food to United Groceries was with the knowledge and acquiescence of respondents, who have waived, and are estopped from making, any claim against appellants. No such finding was requested, and on the contrary the court found that the sale was in fraud of the rights of the respondents, which fraud was additional to that of violating the sales-in-bulk statutes, and that respondents did not learn of the purported sale until several months after it was made.

Contrary to appellants' contention, we find nothing in the transaction, as disclosed by the record, indicating that the receivers' sale to United Food was intended or had the effect of depriving the receivers of their rights as creditors under the sales-in-bulk statutes as against their purchaser.

Appellants contend that the writs of garnishment against them gave no lien upon the assets in their hands as receivers of United Groceries, upon the grounds that the goods were in *custodia legis*. That issue is now merged in the judgment in the main case; there is no separate judgment in the garnishment proceedings.

It is next claimed that the sales-in-bulk law is unconstitutional. If so, it would not change the result here, because of the other finding that the sale to United Groceries was otherwise fraudulent and made for the purpose of hindering and delaying creditors.

Further, it is contended that the judgment holds appellants liable for both the goods and the purchase price thereof. We do not so understand the judgment. It is further contended that the filing by re-

spondents of their claims with the receivers of each the United Food and United Groceries was an election of remedies and a bar to waging those claims in these actions. But these actions were commenced first, and besides, as we understand the record, the claims were so filed with the respective receivers for the benefit of the endorsers on the notes, who had already been sued by the respondents, which course brings this feature of the controversy within the rule announced in *Yokohama Specie Bank v. United States Fidelity & Guaranty Co.*, 123 Wash. 387, 212 Pac. 564, 216 Pac. 851; *Raynor v. Scandinavian-American Bank,* 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716.

Error is assigned, also, upon the allowance, over objections, of several leading questions by counsel for respondents, to which answers were made. Allowing leading questions to be asked is a matter within the discretion of a trial judge. There was no jury in this case. There was no abuse of discretion in allowing the questions objected to or in receiving answers to them.

Other arguments on behalf of the appellants are answered sufficiently, we think, by the findings of fact in the case, together with the discussion herein of more specific assignments and contentions.

Judgment affirmed.

TOLMAN, C. J., PARKER, HERMAN, and HOLCOMB, JJ., concur.